IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BACKROADS CORP, a California corporation, | No C 03-4615 VRW |
| Plaintiff, | ORDER |
| v | |
| GREAT NORTHERN INSURANCE, a Minnesota corporation, | |
| Defendant. | |

Plaintiff Backroads Corporation ("Backroads") has sued its insurer, defendant Great Northern Insurance ("Great Northern") for breach of contract after Great Northern declined coverage for damages stemming from the Federal Aviation Administration's ("FAA") order grounding all civil air traffic following the terrorist attacks of September 11, 2001. Doc #1 (Compl). Great Northern moves for summary judgment in its favor. Doc #15 (MSJ). Backroads opposes. Doc #24 (Opp). Based on the parties' memoranda and the applicable law, the court GRANTS Great Northern's motion.

//

I

Backroads is a tour operator that specializes in adventure vacation packages both in the United States and abroad. Compl ¶6. Backroads' vacation packages consist of food, housing, activities and transportation while in the vacation destination. Doc #16, Ex 2 (Snodsmith Depo) at 24:11-19. Customers are required, however, to obtain their own transportation to and from the vacation destination (i e, airplane tickets, bus tickets, etc). Id at 26:5-24. As of September 10, 2001, Backroads had vacation packages booked from September 11, 2001, onwards. Doc #16, Ex 5 (Interrog Ans) at 5:3-9.

Great Northern issued two commercial insurance policies to Backroads covering the period from December 1, 2000, to December 1, 2001. Doc #1, Exs A (Domestic Ins Pol), B (International Ins Pol). The policy relevant to the present case, policy #3533-38-08 ("the policy"), provided property insurance and commercial general liability insurance within the United States.

The material facts are not in dispute. On the morning of September 11, 2001, terrorists hijacked four planes in the eastern United States. The terrorists flew two planes into the World Trade Center in New York City at 8:46 am and 9:02 am. Doc #16, Ex 1 (FAA 9/11 History) at 2. At 9:06 am, the FAA issued an order banning all flights originating in the northeastern United States bound to or through New York airspace. Id. The FAA issued another order at 9:26 am grounding all civil air traffic throughout the nation regardless of destination. Id. At 9:40 am, the terrorists flew a third plane into the Pentagon in Arlington, Virginia. Id. At 9:45 am, the FAA issued an order directing all civil aircraft to land as

2

soon as possible. Id. The fourth hijacked plane crashed in Somerset County, Pennsylvania at 10:07 am. Id. The FAA issued a "Notice to Airmen" at 10:39 am reaffirming the earlier orders grounding all civil air traffic and ordering airborne plans to land as soon as possible. Id. On September 13, 2001, the FAA issued an order authorizing the resumption of civil flights. Compl ¶7.

As a result of the FAA's order grounding all civil air traffic, Backroads' clients were unable to fly to their domestic or international vacation destinations on September 11 and 12, 2001. Compl ¶9. Backroads responded by issuing credits or paying refunds to clients. Snodsmith Depo at 51:21-52:14. Backroads gave credits or paid refunds both to clients scheduled to fly on September 11 or 12, 2001, <u>and</u> to clients scheduled to fly on or after September 13, 2001, who cancelled before September 13, 2001. Doc #16, Ex 4 (List of Cancellations). Moreover, Backroads gave credits or paid refunds to some clients who cancelled their vacations <u>after</u> September 13, 2001. Id. Backroads alleges that it issued credits or paid refunds to 571 clients, yielding a business income loss of $1,589,781. Id. Additionally, Backroads alleges it incurred extra expenses from the additional employee time required to process the cancellations. Interrog Ans at 14:20-22.

Backroads sought to recover these losses under two provisions of the policy, both of which provide coverage for "business income loss" and "extra expenses" resulting from "the actual or potential impairment of [Backroads'] operations." Compl ¶16; Domestic Ins Pol, Form 80-02-1004 at 3. The first provision, the "dependent business premises" provision, provides coverage when the impairment of Backroads' operations results from "direct

3

physical loss or damage by a covered peril to property or personal property of a dependent business premises at a dependent business premises." Id. The second provision is the "civil authority" provision, which provides coverage "when a civil authority prohibits access to [Backroads'] premises or a dependent business premises" and the civil authority's prohibition is the response to some "direct physical loss or damage to property away from [Backroads'] premises or a dependent business premises by a covered peril." Id at 4. The policy defines dependent business premises as "premises operated by others on whom" Backroads depends to: (1) "deliver materials or services to [Backroads] or others for [Backroads'] account (contributing premises)"; (2) "accept [Backroads'] products or services (recipient premises)"; (3) "manufacture products for delivery to [Backroads'] customers under contract of sale (manufacturing premises)"; or (4) "attract customers to [Backroads'] business (leader premises)." Domestic Ins Pol, Form 80-02-1030 at 23.

Backroads filed a claim under both provisions with Great Northern on October 8, 2001, for pecuniary losses stemming from the FAA's order grounding all civil air traffic. Compl ¶12. Great Northern denied Backroads' claim on November 7, 2001. Doc #1, Ex C (First Denial Notice). On December 3, 2001, Backroads resubmitted its claim (Doc #17, Ex E) and Great Northern again denied coverage. Doc #17, Ex G (Second Denial Notice). Backroads filed the present lawsuit on October 14, 2003, alleging that Great Northern is in breach of contract because it failed "to pay valid claims under the [policy]." Compl ¶24. The court has jurisdiction pursuant to 28 USC § 1332. Great Northern moves for summary judgment in its favor

**4**

1 pursuant to FRCP 56, arguing that there is no genuine issue of
2 material fact whether the policy provides coverage for Backroads'
3 losses arising from the FAA's grounding order.

## II

Summary judgment is appropriate if there are no genuine issues of material fact, thus allowing a party to receive judgment as a matter of law.  FRCP 56(c); <u>Anderson v Liberty Lobby</u>, 477 US 242, 248 (1986).  In the present case, the parties agree on all material facts; the only issue in contention is the construction of the insurance policy.  MSJ at 11; Opp at 8.  The parties agree that California law applies (MSJ at 11; Opp at 8), and in California, "interpretation of an insurance policy is a question of law." <u>Waller v Truck Insurance Exchange, Inc</u>, 11 Cal 4th 1, 18 (1995). Accordingly, and in view of the absence of a factual dispute here, one of the parties in this case is entitled to summary judgment.

### A

Under California law, "[t]he burden is on an insured to establish that the [event] forming the basis of its claim is within the basic scope of insurance coverage."  <u>Dart Industries, Inc v Commercial Union Insurance Co</u>, 28 Cal 4th 1059, 1071 (2002).

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."  Cal Civ Code, § 1638.  Unless the parties use language in a technical sense or the use of the language gives it a special meaning, judicial interpretation of contract language reflects the "ordinary and popular sense" of the language.  Cal Civ

5

Code § 1644. See <u>Reserve Insurance Co v Pisciotta</u>, 30 Cal 3d 800, 807 (1982) ("Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them.").

Ambiguous terms "must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Cal Civ Code § 1649. Language in a contract is ambiguous if it is capable of more than one reasonable construction. <u>National Auto & Casualty Insurance Co v Underwood</u>, 9 Cal App 4th 31, 39 (1992). "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." <u>Reserve Insurance</u>, 30 Cal 3d at 807. Finally, the California Supreme Court has recognized that public policy considerations demand that "insurers draw clear policies or suffer adverse consequences; we have consistently held that ambiguities in such documents must be resolved against the insurer." <u>Bareno v Employers Life Insurance Co</u>, 7 Cal 3d 875, 878 (1972). See also <u>State Farm Mutual Auto Insurance Co v Johnston</u>, 9 Cal 3d 270, 274 (1973) ("If the insurer uses language which is uncertain[,] any reasonable doubt will be resolved against it * * *.").

Accordingly, under California law, the language of the policy at issue governs its interpretation as long as the language is clear and explicit; any ambiguities will be construed in favor of Backroads.

B

Backroads contends that Great Northern is in breach of contract because Great Northern failed "to pay valid claims under

6

the [policy]." Compl ¶24. As mentioned above, Backroads sought to recover its "business income loss" from vacation cancellations and its "extra expenses" stemming from the staff time required following the FAA's grounding order. Id ¶18. Backroads argues that its claims are valid because they fall within the coverage provided by the "dependent business premises" and "civil authority" provisions of the policy. Opp at 9-20.

The "dependent business premises" provision provides coverage when the impairment of Backroads' operations results from "direct physical loss or damage by a covered peril to property or personal property of a dependent business premises at a dependent business premises." Domestic Ins Pol, Form 80-02-1004 at 3. In arguing for coverage under this provision, Backroads' logic goes as follows: First, airports, airlines or airways ("air travel providers") are "dependent business premises" of Backroads. Opp at 11:3-23. Next, the FAA's grounding order <u>financially</u> damaged the air travel providers, and this damage is sufficient under the policy because the phrase "direct physical loss or damage" can be construed to mean "direct physical loss or damage of <u>any kind</u>" — including financial damage. Id at 13:3-10; 12:23-13:3 (emphasis in original). This financial damage occurred "at the dependent business premises" — namely, the airports. Id at 13:3-6. Next, the financial damage to the air travel providers — that is, the grounding of all civil flights — caused impairments to Backroads' operations in the form of "mass cancellations, demands for refunds and lost productivity[.]" Id at 10:13-15. Thus, because Backroads' dependent business premises (the airports) were financially damaged, thus resulting in the impairment of Backroads'

7

1 operations, the "dependent business premises" provision covers the
2 losses stemming from the FAA's grounding order.
3       As to the "civil authority" provision, Backroads argues
4 that the FAA is a "civil authority," and that it "prohibit[ed]
5 access to * * * a dependent business premises" — namely, the
6 premises of air travel providers — because of a "direct physical
7 loss or damage" — namely, the terrorist attacks — "to property away
8 from * * * a dependent business premises" — namely, the World Trade
9 Center and Pentagon.  Domestic Ins Pol, Form 80-02-1004 at 4.

C

12       Backroads' position rests on whether air travel providers
13 are "dependent business premises" of Backroads within the meaning
14 of the policy.  The policy defines "dependent business premises" as
15 "premises operated by others on whom" Backroads depends to:  (1)
16 "deliver materials or services to [Backroads] or others for
17 [Backroads'] account (contributing premises)"; (2) "accept
18 [Backroads'] products or services (recipient premises)"; (3)
19 "manufacture products for delivery to [Backroads'] customers under
20 contract of sale (manufacturing premises)"; or (4) "attract
21 customers to [Backroads'] business (leader premises)."  Domestic
22 Ins Pol, Form 80-02-1030 at 23.  Backroads asserts air travel
23 providers are "dependent business premises" pursuant to the first,
24 second and fourth criteria.  Compl ¶18; Opp at 11.  Applying
25 California contract law, however, the court concludes that under no
26 reasonable interpretation of the policy do air travel providers
27 constitute dependent businesses.
28 //

1

*Contributing Premises*

Backroads contends that air travel providers "deliver materials or services," namely air travel, to Backroads' clients "for Backroads' account," thus making the air travel providers "contributing premises" under the policy. Compl ¶18. Such an interpretation is not consistent with the plain meaning of the phrase "for Backroads' account." The ordinary and popular meaning of the clause "for Backroads' account" requires that a <u>motive</u> of the air travel providers in serving Backroads' clients must be to benefit or otherwise affect Backroads. See, e g, Oxford English Dictionary (2d ed 1989) (listing among the definitions of "upon [or] on account of:" "for the sake of," "by reason of," "because of"); Merriam-Webster's Collegiate Dictionary (10th ed 1998) (listing among the definitions of "on account of:" "for the sake of," "by reason of"). See also <u>Mohammed v Gonzales</u>, 400 F3d 785, 798 (9th Cir 2005) (finding that persecution "<u>on account of</u> membership in a particular social group" means that the "motivating factor" of the persecution is "membership in a particular social group.") (emphasis added).

This reading of "for Backroads' account" comports with the common understanding of a substantially interchangeable phrase: "on account of" Backroads. The airports, airlines and airways provide air travel to Backroads' clients regardless of any benefit to or effect on Backroads. The air travel providers would provide service to the people whether Backroads existed or not. Moreover, Backroads fails to demonstrate any relationship between Backroads and the air travel providers which would suggest air travel providers take <u>any</u>

9

1 <u>action</u> "because of" or "for the sake of" Backroads. The air travel
2 providers afford transportation whether their customers are bound to
3 commence a Backroads' adventure tour or travel for some other
4 purpose. The case would, of course, be quite different if the air
5 travel providers were chartered by Backroads to carry travelers on a
6 tour that Backroads conducts.
7 Hence, the court concludes that the air travel providers
8 in this case do not provide services to Backroads' clients "for
9 Backroads' account" and thus the air travel providers are not
10 contributing premises under the policy.

### 2

### *Receipt Premises*

14 Next, Backroads contends that air travel providers accept
15 its "products or services" by "accepting [Backroads'] clients to
16 take them to their destination city to begin their trips," thus
17 making the air travel providers "receipt premises" within the
18 language of the policy. Opp at 11:14-15. This interpretation is
19 absurd and California law does not allow this court to adopt an
20 absurd interpretation in order to create an ambiguity where one does
21 not exist. <u>Reserve Insurance</u>, 30 Cal 3d at 807.
22 A "product" is "[t]hat which is produced by any action,
23 operation, or work." Oxford English Dictionary (2d ed 1989). To
24 "produce" something is to give it "being, form, or shape." Merriam-
25 Webster's Collegiate Dictionary (10th ed 1998). In no way does
26 Backroads "produce" its clients. Clients likewise cannot be
27 considered a "service" of Backroads. Id (defining a "service" as a
28 "useful labor that does not produce a tangible commodity"). Under

even the broadest interpretation, Backroads' clients cannot be considered "products or services" that are accepted by air travel providers.

### 3

### *Leader Premises*

Backroads' final contention is that air travel providers "attract customers to [Backroads'] business" because "none (or almost none) of Backroads [sic] potential clients would be willing to make bookings with Backroads but for the existence of scheduled commercial air transportation from the United States to their destinations," thus making the air travel providers "leader premises" within the language of the policy. Opp at 11:16-18. This interpretation is not consistent with the ordinary and popular meaning of the policy's language.

The phrase "attract customers to [Backroads'] business" requires that the air travel providers <u>cause</u> Backroads' potential clients to approach Backroads or book vacations with Backroads. See, e g, Merriam-Webster's Collegiate Dictionary (10th ed 1998) (defining "attract" as "to cause to approach or adhere"). Air travel providers do not cause Backroads' customers to approach Backroads. Nor do air travel providers promote Backroads' services. To the limited extent that mere knowledge of commercial air travel affects potential clients' decisions to book vacations with Backroads, such an impact is too remote to qualify as "attracting" clients to Backroads' business.

Backroads asserts that potential clients would not be willing to book vacations but for commercial flights being available

11

(Opp at 11:16-18). Put another way, Backroads contends that any time its potential clients would not book vacations "but for the existence" of a particular business, that business "attract[s] customers to [Backroads'] business." Opp at 11:16-18. Should the court accept Backroads' interpretation, the list of "leader premises" under the policy would swell with phone companies, internet service providers, foreign and domestic electricity producers, international banks and tire manufacturers; none of these businesses, however, "attract[s] customers to [Backroads'] business" within the ordinary and popular meaning of the phrase. Accordingly, the court finds that air travel providers do not "attract" customers to Backroads' business.

Because the court concludes the air travel providers are not dependent business premises of Backroads, Backroads cannot recover its "business income loss" or "extra expenses" under the "dependent business premises" provision of the policy.

D

Next, Backroads' claims that the "civil authority" provision provides coverage for its "business income loss" and "extra expenses." Compl ¶18. This argument fails for the reason listed above: air travel providers are not dependent businesses premises within the meaning of the policy. The "civil authority" provision provides coverage "when a civil authority prohibits access to your premises or a <u>dependent business premises</u>." Domestic Ins Pol, Form 80-02-1004 at 4 (emphasis added). Since the FAA's order did not prohibit access to Backroads' premises or a "dependent business premises," the provision does not provide coverage for

12

Backroads' "business income loss" or "extra expenses" resulting from the FAA's order grounding all civil air traffic.

### IV

In sum, the court GRANTS Great Northern's motion for summary judgment (Doc #15).  The clerk is directed to ENTER JUDGMENT in favor of Great Northern, CLOSE the file and TERMINATE all motions.

SO ORDERED.

_____
VAUGHN R WALKER
United States District Chief Judge